This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: July 9, 2026**

**No. S-1-SC-40702**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DOMINIC DE LA O,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**John P. Sugg, District Judge**

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl Swanson, Assistant Solicitor General
Albuquerque, NM

for Appellee

### DECISION

**THOMSON, Justice.**

**{1}** Defendant Dominic De La O challenges his convictions for first-degree murder and tampering with evidence. He seeks a new trial based on four issues. First, he argues the district court committed fundamental error by instructing the jury on the aggravating circumstance of murder of a peace officer along with the elements of first- and second-degree murder. Second, he contends there was insufficient evidence to

support his convictions for first-degree murder and tampering with evidence. Third, he argues the district court erroneously denied his motion for mistrial after the State asked a witness about Defendant having a warrant. Finally, he contends his convictions were improperly aggravated both because the statute permitting aggravation of a sentence, NMSA 1978, § 31-18-15.1 (2009), is void for vagueness, and because the district court relied on inappropriate aggravating circumstances in this specific case.

**{2}** Having duly considered Defendant's arguments, we conclude none merits relief. We exercise our discretion to dispose of this appeal by nonprecedential decision. Rule 12-405(B) NMRA. Accordingly, we limit our discussion to the law and the facts necessary to decide the issues raised. *See State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 (explaining nonprecedential decisions are written solely for the benefit of the parties, who know the details of the case).

## I.     BACKGROUND

**{3}** In the early morning hours of July 15, 2023, Officer Eric Cisneros of the Alamogordo Police Department conducted a traffic stop on a car that did not have illuminated tail lights. When the car stopped, two women got out and walked toward the officer with their hands up. The car sped away. It was soon determined that Defendant was at the wheel.

**{4}** Defendant led police on a high-speed chase through a populated neighborhood, crashed the car into a light pole, and fled on foot down an alleyway while carrying a sawed-off shotgun. By this time, multiple officers pursued Defendant. Defendant fired the sawed-off shotgun at one of the pursuing officers, Alamogordo Police Officer Anthony Ferguson (Victim). Victim died of the injury.

**{5}** Defendant continued running. He discarded his blue t-shirt and the sawed-off shotgun as he ran. Eventually, police shot Defendant in the leg. When apprehended, Defendant feigned an inability to speak English.

**{6}** At trial, Defendant did not dispute these facts. The theory of defense was that Defendant did not deliberate before pulling the trigger, but instead killed Victim in a rash or impulsive act amounting to second-degree murder. Rejecting that theory, the jury found Defendant guilty of willful and deliberate first-degree murder, among other crimes. The jury also found the aggravating circumstance of murder of a peace officer in the discharge of his duties. NMSA 1978, § 31-20A-5(A) (1981). Accordingly, the district court sentenced Defendant to life in prison without possibility of release or parole (LWOP). NMSA 1978, § 31-20A-2 (2009). Further facts will be developed as necessary to the discussion.

## II.      DISCUSSION

## A.      The District Court Did Not Commit Fundamental Error by Allowing the Jury to Consider the Aggravating Circumstance of Murder of a Peace Officer Along with the Elements of First- and Second-Degree Murder

### 1.      Standard of review

**{7}**      "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citations omitted). The initial inquiry is the same under both standards. *Id.* The inquiry is "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (text only)[1] (citation omitted). Even if an instruction is "straightforward and perfectly comprehensible on its face," the instructions may cause confusion or misdirection when, "through omission or misstatement," they "fail to provide the juror with an accurate rendition of the relevant law." *Id.* (text only) (citation omitted).

**{8}**      Under a fundamental error analysis, we then review the challenged instructions in context of all the instructions to determine whether the omission or misstatement was corrected by another instruction. *See id.* ¶ 15 (noting that under our fundamental error analysis juror confusion can be eliminated by subsequent instructions that adequately address omitted elements). "In New Mexico, then, unpreserved error in jury instructions is 'fundamental' when it remains uncorrected, thereby allowing juror confusion to persist." *Id.* ¶ 16.

### 2.      The challenged instructions

**{9}**      The jury in this case was instructed on the elements of first-degree willful and deliberate murder in Instruction 7, which contained a mens rea element that "[t]he killing was with the deliberate intention to take away the life of [Victim]." Consistent with the language of UJI 14-201 NMRA, the jury was instructed on the definition of deliberate intention, as follows:

> A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer

---

[1]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets— that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

must weigh and consider the question of killing and his reasons for and against such a choice.

**{10}** The next instruction, Instruction 8, described the aggravating circumstance of murder of a peace officer. It read:

If you find the defendant guilty of first degree murder by a deliberate killing, then you must determine whether the aggravating circumstance of murder of a peace officer was present.

You must complete the special verdict form to indicate your finding. For you to make a finding of "yes," the state must prove to your satisfaction beyond a reasonable doubt that:

1. [Victim] was a peace officer;

2. [Victim] was performing the duties of a peace officer;

3. The defendant knew or should have known that [Victim] was a peace officer; and,

4. The defendant intended to kill or acted with a reckless disregard for human life and knew that his acts carried a grave risk of death.

*See* UJI 14-7014 NMRA; UJI 14-6013 NMRA; UJI 14-7010 NMRA, Use Note 1.[2]

**{11}** Instruction 9 listed the elements of second-degree murder, which contained the mens rea element, "The defendant knew that his acts created a strong probability of death or great bodily harm to [Victim]." After instruction on other charged crimes, the jury was instructed, in relevant part,

You must consider each of these crimes. You should be sure that you fully understand the elements of each crime before you deliberate further. You have the discretion to choose the manner and order in which you

---

[2]The enumerated elements of Instruction 8 were taken from UJI 14-7014, which provides the essential elements of murder of peace officer in LWOP proceedings. However, the preliminary language of Instruction 8 was patterned after UJI 14-6013, which provides a special verdict for use of a firearm. This mixed instruction was given because the district court chose not to bifurcate the jury determination of the LWOP aggravator of murder of peace officer. *See State v. Chadwick-McNally*, 2018-NMSC-018, ¶ 2, 414 P.3d 326 ("[T]he Capital Felony Sentencing Act . . . as amended in 2009 neither requires nor prohibits bifurcated guilt and sentencing proceedings" when LWOP aggravators are at issue); *see also* Section 31-20A-5 (listing the aggravating circumstances); Section 31-20A-2 (allowing LWOP to be imposed when the jury finds an aggravating circumstance listed in Section 31-20A-5). There are no UJIs for LWOP aggravators in nonbifurcated proceedings. *See* UJI 14-7010, Use Note 1 ("If the court does not adopt a bifurcated proceeding, do not use this instruction or the other instructions in Chapter 70; instead give special verdict and special interrogatory instructions patterned on UJIs 14-6013 and 14-6014 NMRA for each alleged murder and aggravating circumstance."). The district court drafted Instruction 8 along the lines suggested in Use Note 1 of UJI 14-7010.

deliberate on this Count, but you must return a unanimous verdict of not guilty on first degree murder by deliberate killing before entering a verdict on second degree murder.

{12}    Defendant did not object to any of these instructions at trial. On appeal, he nevertheless argues that these instructions, "[w]hen read together, . . . give the impression that first-degree killing of a police officer includes a killing where a defendant acts 'with a reckless disregard for human life and kn[ows] that his acts carried a grave risk of death'" (second alteration in original), which Defendant points out is a similar standard to the mens rea for second-degree murder.

### 3.    No fundamental error

{13}    Under our fundamental error standard of review, our initial inquiry is "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Benally*, 2001-NMSC-033, ¶ 12 (text only) (citation omitted). We note at the outset that Instruction 8, the LWOP aggravator instruction, is relevant only to the capital crime of first-degree murder. NMSA 1978, § 30-2-1(A) (1994) (providing that first-degree murder is a capital felony); NMSA 1978, § 31-18-14 (2009) (stating that the capital felony sentence can be life or LWOP); § 31-20A-2 (stating that LWOP aggravators determine the sentence for a capital felony); § 30-2-1(B) (providing that second-degree murder is a second-degree felony).

{14}    Instruction 8 contains a dual mens rea component: first, that Defendant "knew or should have known that [Victim] was a peace officer," which related to the actual aggravating fact of whether Defendant murdered a peace officer; and second, that Defendant "intended to kill or acted with a reckless disregard for human life and knew that his acts carried a grave risk of death," which related back to the mens rea of the murder itself rather than the aggravating circumstances.

{15}    We note the jury was given extensive instruction on how to deliberate between first- and second-degree murder and how to fill out the relevant verdict forms according to the procedures in UJI 14-6012 NMRA, UJI-14-6002A NMRA, and UJI-14-6002B NMRA. Within those procedural instructions, the jury was to "consider each of these crimes" and was given "the discretion to choose the manner and order in which [to] deliberate" on the first- and second-degree murder charges in Count 1, but no mention was made of the intervening LWOP aggravator instruction. When considering the procedural instructions for Count 1, a juror may have been confused as to the role of the LWOP aggravator in Instruction 8, which was interposed directly between the elements instructions on first- and second-degree murder in Instructions 7 and 9. Particularly, a juror may have wondered why the aggravating circumstance of murder of a peace officer (relevant only to first-degree murder) required the mens rea of the killing to be something more akin to second-degree murder—a mere intent to kill or reckless disregard for human life—than the deliberate intention corresponding to first-degree murder. Given the three distinct mens rea descriptions in Instructions 7, 8, and 9, it is possible that a juror might have read them together and reasonably but erroneously believed that Instruction 8 lowered the mens rea required for first-degree murder when

committed against a peace officer. Thus, a reasonable juror might have been confused or misdirected by these instructions.

**{16}** However, the second inquiry under our fundamental error standard of review is to determine whether any confusion or misdirection was corrected in other parts of the instructions. *State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M. 39, 878 P.2d 988 ("[I]f a jury instruction is capable of more than one interpretation, then the court must next evaluate whether another part of the jury instructions satisfactorily cures the ambiguity."). We conclude that, when read as a whole, the jury instructions were clear.

**{17}** The preliminary language of Instruction 8 provided, "*If* you find the defendant guilty of first degree murder by a deliberate killing, *then* you must determine whether the aggravating circumstance of murder of a peace officer was present." (Emphasis added.) By this express language, the jury was informed that it was not to reach the aggravating circumstance unless and until it made the determination that Defendant was guilty of first-degree murder. We presume that the jury follows the instructions as written. *Benally*, 2001-NMSC-033, ¶ 21. Therefore, under this instruction, we are satisfied the jury already resolved the question of Defendant's guilt of first-degree murder before reaching the issue of whether Defendant murdered a peace officer.

**{18}** Because any ambiguity was clarified by this portion of Instruction 8, we hold the district court did not commit fundamental error in giving these instructions.

## B.     Sufficient Evidence Supports Defendant's Convictions

### 1.     Standard of review

**{19}** We defer to the trier of fact when reviewing claims of insufficient evidence, "'view[ing] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict.'" *State v. Revels*, 2025-NMSC-021, ¶ 57, 572 P.3d 974 (quoting *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056). We ask "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt *beyond a reasonable doubt* with respect to *every element* essential to a conviction." *State v. Garcia*, 1992-NMSC-048, ¶ 25, 114 N.M. 269, 837 P.2d 862 (internal quotation marks and citation omitted). "Deliberate intent may be inferred from the particular circumstances of killing as proved by the State through the presentation of physical evidence." *State v. Duran*, 2006-NMSC-035, ¶ 8, 140 N.M. 94, 140 P.3d 515. "So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (text only) (citation omitted).

### 2.     Sufficient evidence of deliberation

**{20}** Defendant challenges the sufficiency of the evidence for the jury's finding that he killed Victim willfully and deliberately. Defendant argues that he might have carried the sawed-off shotgun from the scene of the car crash "because he did not want the gun discovered in the car," and he points out that there was only "one gunshot . . . , no

evidence of a struggle, and no statements that would suggest any animus towards police." However, we do not consider alternative interpretations of the evidence when reviewing the sufficiency of the evidence. *See State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 ("An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence.").

**{21}** Viewing the evidence, as we must, in the light most favorable to the verdict, the State presented ample evidence of Defendant's deliberate intent to kill Victim. "Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 (internal quotation marks and citation omitted).

**{22}** The facts of this case are similar to those of *State v. Astorga*, 2015-NMSC-007, 343 P.3d 1245. In *Astorga*, we held that "the manner of the killing alone supported an inference of deliberation" where the defendant shot a police officer rather than submit to a routine traffic stop. *Id.* ¶ 63. We reasoned that

> [t]he jury could have reasonably inferred that, once Defendant saw that he was being pulled over, he faced several options, including whether: (1) to cooperate with Deputy McGrane during the stop and likely be arrested on the outstanding warrant; (2) to attempt to flee from Deputy McGrane; or (3) the option that he chose—to wait for Deputy McGrane to approach the truck and shoot him in the face at point-blank range. The jury could have found that Defendant contemplated all of these choices and, even if he did not make his final decision until the last second, the decision to kill Deputy McGrane was nonetheless a deliberate one.

*Id.*

**{23}** Similarly here, the jury could have reasonably inferred that Defendant was aware of several different courses of action available to him from the time he was pulled over by police. Defendant considered his options and first deliberately chose to flee, abandoning his travelling companions by the side of the road but keeping his sawed-off shotgun with him. When his high-speed chase ended with Defendant crashing his car into a telephone pole, Defendant again considered his options and deliberately chose to take his sawed-off shotgun from the scene of the crash and run away, on foot, from pursuing officers. When officers ordered him to get on the ground, the jury could reasonably have inferred that Defendant deliberately chose not to comply with those orders, but rather to shoot Victim in the face with the sawed-off shotgun that he kept with him for just such a purpose.

**{24}** We conclude that a reasonable jury could have inferred from these facts a deliberate intent to murder Victim. *See id*; *see also, e.g., State v. Romero*, 2019-NMSC-007, ¶ 59-60, 435 P.3d 1231 (finding deliberate intention to kill a police officer when the defendant took out a concealed pistol, aimed it as the officer approached, pushed a

passenger out of the car, and shot the officer). Therefore, sufficient evidence supports Defendant's conviction for first-degree willful and deliberate murder.

### 3. Sufficient evidence of tampering

**{25}** Defendant argues there was insufficient evidence of tampering because police found the items he discarded—his blue t-shirt and the sawed-off shotgun—quickly and easily. Defendant likens his discarding of those items to *State v. Jackson*, 2021-NMCA-059, 497 P.3d 1208. In that case, the Court of Appeals reversed the defendant's tampering conviction because the defendant never concealed the evidence from the arresting officers; instead, he tossed a bag of drugs inside his car in full view of officers. *Id.* ¶ 9. Defendant argues that because he threw the items along the path while he was running, like in *Jackson*, "[t]he items were not hidden or destroyed," and "there was no 'act of concealment'" on which to base the tampering convictions.

**{26}** We reject Defendant's argument. "The tampering statute punishes those who try to frustrate the criminal justice system by obstructing access to evidence of a crime." *State v. Radosevich*, 2018-NMSC-028, ¶ 10, 419 P.3d 176 (interpreting NMSA 1978, § 30-22-5 (2003)). Far from the defendant in *Jackson* who tossed a bag of drugs in plain view of multiple officers during his arrest, 2021-NMCA-059, ¶ 4, the State's evidence in this case showed that Defendant discarded the blue t-shirt and the sawed-off shotgun while actively running from police and not within view of any officer. When a defendant discards a murder weapon while fleeing the scene, it is reasonable to infer the defendant has done so to avoid prosecution for the murder. *See, e.g.*, *State v. Ramirez*, 2018-NMSC-003, ¶ 15, 409 P.3d 902. Similarly, when a defendant discards the clothing he was wearing during the commission of a murder, such as the blue t-shirt police saw Defendant wearing before he shot Victim, it is reasonable to infer the defendant has done so to avoid identification and prosecution for the murder. Therefore, there was sufficient evidence that Defendant "changed, hid or placed" the t-shirt and sawed-off shotgun with the intent "to prevent [his] apprehension, prosecution, or conviction" for first-degree murder. *See* UJI 14-2241 NMRA. We affirm Defendant's conviction for tampering with evidence.

### C. The District Court Did Not Commit Harmful Error by Refusing to Grant Defendant's Motion for Mistrial When the State Elicited Testimony About Defendant's Warrant

**{27}** "We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. An abuse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *State v. Gallegos*, 2009-NMSC-017, ¶ 21, 146 N.M. 88, 206 P.3d 993 (text only) (citations omitted). "When reviewing the district court's decision on a motion for mistrial, we are mindful that the trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision." *State v. Smith*, 2025-NMSC-025, ¶ 7, 578 P.3d 1016 (text only) (citation omitted). "An error committed by admitting inadmissible evidence is generally cured by a ruling of the court striking the evidence and admonishing the jury to

disregard such evidence." *State v. Smith*, 2016-NMSC-007, ¶ 46, 367 P.3d 420. Even if a trial court erred in admitting evidence, we review for nonconstitutional harmless error. *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936. "'[N]on-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict.'" *Id.* (alteration in original) (quoting *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110).

**{28}** Defendant asserts the district court erred in denying his motion for mistrial after, in response to the prosecutor's question, a witness testified that Defendant knew there was an active warrant for his arrest when he fled from police and shot Officer Ferguson. Defendant asserts this testimony was inadmissible under Rule 11-404(B) NMRA because the fact that Defendant had a warrant was only relevant to his propensity to commit the crime. Even though the district court sustained defense counsel's objection and admonished the jury to disregard the testimony and not consider the evidence for any purpose or allow it to enter into the deliberative process at all, Defendant argues the admonition was not sufficient to cure the prejudice, and the admission of the testimony was not harmless error because the prosecutor's question "intentionally injected propensity evidence into the trial."

**{29}** Under our harmless error standard of review the admission of this evidence does not present a basis for reversal. Nonconstitutional error such as the erroneous admission of evidence is grounds for reversal only when there is a "reasonable *probability* the error affected the verdict." *Serna*, 2013-NMSC-033, ¶ 22 (text only) (citation omitted). "To judge the 'probable' effect of an evidentiary error, courts must evaluate all circumstances surrounding the error . . . , including the source of the error and the emphasis placed on the error at trial." *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 (citations omitted). In this case, the error was not emphasized. After the district court sustained the objection and admonished the jury, no further mention was made of Defendant's warrant status. And, "[t]o put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial." *Id.* In this case, the other evidence of guilt was overwhelming. We have already discussed the nature of this evidence and need not repeat it here. In the context of trial as a whole, the single mention of Defendant's outstanding warrant was not important to the prosecution's case and is unlikely to have affected the verdict. Therefore, we will not grant Defendant relief on this basis.

## D.     The District Court Properly Aggravated Defendant's Sentences for Aggravated Fleeing and Tampering

**{30}** Defendant argues that the district court improperly aggravated his convictions for aggravated fleeing and tampering with evidence. He challenges the aggravation of these sentences on two grounds. First, he asserts that the aggravation statute, § 31-18-15.1(A), is void for vagueness because it does not contain clear guidelines for determining what may constitute aggravating circumstances. Second, he contends that the two aggravating circumstances the district court relied on in this case—Defendant used a sawed-off shotgun and committed the crime while on conditions of release—

were inappropriate under our case law construing Section 31-18-15.1. Neither of these arguments is availing.

## 1. Section 31-18-15.1 is not void for vagueness

**{31}** As Defendant acknowledges, we already determined that Section 31-18-15.1 is not void for vagueness in *State v. Segotta*, 1983-NMSC-092, ¶ 8, 100 N.M. 498, 672 P.2d 1129. In that case, we clarified that even though the statute does not provide specific factors for determining an aggravating circumstance, "some of the factors which a trial court *may* consider and weigh" in making such a determination "are: unusual aspects of the defendant's character, past conduct, age, health, any events surrounding the crime, pattern of conduct indicating whether he or she is a serious threat to society, and the possibility of rehabilitation." *Id.* ¶ 9. We specified that the court was not limited to those factors. *Id.*

**{32}** Defendant urges us to revisit that opinion because "the precedent is unworkable and facts and principles of law have developed" since *Segotta*. Specifically, he argues that *Segotta* provides "no real standard by which to review the factors," thus foreclosing meaningful appellate review. Defendant claims that *Segotta*'s open-ended factors allows a "district court to rely on whatever factors it might deem reasonable" until the appellate courts "decide, after the fact, that a factor was correctly or incorrectly relied upon."

**{33}** Defendant has not presented sufficient grounds for overturning the precedent set in *Segotta*. As a rule, we adhere to the principle of stare decisis. *See State v. Martinez*, 2006-NMSC-007, ¶ 28, 139 N.M. 152, 130 P.3d 731 ("We are always reluctant to overturn precedent."). Among the considerations for overturning precedent is "whether the precedent is a remnant of abandoned doctrine," whether it "has proved to be unworkable," and "whether changing circumstances have deprived the precedent of its original justification." *State v. Montoya*, 2013-NMSC-020, ¶ 40, 306 P.3d 426 (text only) (citation omitted). None of those considerations are present here.

**{34}** A district court's sentencing discretion is not "a remnant of an abandoned doctrine," but is central to the legislative scheme of criminal punishment. *See State v. Tafoya*, 2010-NMSC-019, ¶ 20, 148 N.M. 391, 237 P.3d 693 ("District courts have broad discretion in fashioning a criminal sentence that is appropriate to the offense and the offender." (text only) (citation omitted)). And Defendant has not demonstrated that *Segotta* has proven to be unworkable; he merely cites cases that affirmed the district court's determination of aggravating circumstances, but he does not show how those affirmances render *Segotta* unworkable. Instead, it appears that district courts and appellate courts have been applying *Segotta* without difficulty. Finally, Defendant does not demonstrate that changing circumstances have deprived *Segotta* of its justification. He points out that *Segotta* relied on the reasoning of a Colorado case interpreting a statute that was later repealed. However, we fail to see how changes in Colorado's sentencing scheme affect the reasoning in *Segotta* in any meaningful way.

**{35}** In sum, Defendant has failed to demonstrate that *Segotta* should be overruled. We therefore conclude that *Segotta* is binding precedent and that its holding—that Section 31-18-15.1 is not void for vagueness—is conclusive.

## 2. The district court used appropriate aggravating circumstances

**{36}** Defendant argues that the district court erred by aggravating his convictions for use of a sawed-off shotgun because "he did not use the gun to create fear" like the defendant in *State v. Roper*, 2001-NMCA-093, ¶ 16, 131 N.M. 189, 34 P.3d 133. But the *Roper* Court's reasoning did not turn on the fact that the sawed-off shotgun was used to create fear. Instead, the *Roper* Court concluded that

> all matters relevant to the event for which Defendant is tried and convicted are circumstances that may aggravate or mitigate and result in an altered sentence. Therefore, the trial court did not err in relying on the nature of the particular firearm used, the large number of people victimized by the event, and the complete innocence of all bystanders, including the two victims who were shot.

*Id.* ¶ 19 (citation omitted). Similarly here, Defendant's use of a sawed-off shotgun—an inherently dangerous weapon—was part of the overall "circumstances surrounding the offense" which are properly considered under Section 31-18-15.1.

**{37}** Lastly, Defendant argues that the district court erred by aggravating his convictions based on Defendant's conditions-of-release status at the time he committed the crimes. Defendant points out that *Segotta* defines an aggravating circumstance as one that "make[s circumstances] worse, more serious, or more severe," 1983-NMSC-092, ¶ 8 (internal quotation marks and citation omitted), but Defendant contends that "[t]here is nothing about committing a crime while on conditions of release that makes it more severe or intensifies it." We reject this argument. *Segotta* held that a district court may consider the defendant's "past conduct" and "pattern of conduct indicating whether he or she is a serious threat to society" as aggravating circumstances. *Id.* ¶ 9. Defendant's pattern of disregarding the law was a relevant aggravating circumstance that the district court properly considered.

**{38}** We therefore hold that the district court properly aggravated Defendant's sentences for aggravated fleeing and tampering with evidence under Section 31-18-15.1.

## III. CONCLUSION

**{39}** For the foregoing reasons, we affirm Defendant's convictions.

**{40}** **IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**